## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

COLLEEN ARNESON
COLLEEN ARNESON
as parent and best friend of K.A.
JOANNE LIZOTTE
AMY-LYNN ZOLT
SHARON HIGGINS,
        Plaintiffs


       v.                           C.A. No. 11-190-ML


DONALD GREBIEN, Mayor,
City of Pawtucket
WILLIAM D. MULHOLLAND, Superintendent of
Parks and Recreation Division
WILLIAM HOWE, Director of Public Works,
City of Pawtucket,
        Defendants


### MEMORANDUM AND ORDER

MARY M. LISI, Chief District Judge.

This is the second § 1983 action brought against Pawtucket City officials (the "Defendants") regarding the City's policy to allow all public and private schools in Pawtucket free access to publicly owned and maintained fields and athletic facilities. As in the previously litigated Rogers v. Mulholland, the Plaintiffs seek injunctive and declaratory relief by asserting that the City is "subsidizing religion by providing publicly owned athletic fields and facilities to religious (Catholic) schools free of charge" in violation of the First, Fifth and Fourteenth Amendments of the United States Constitution, as well as the Rhode Island

1

Constitution. <u>Rogers v. Mulholland</u>, 858 F.Supp.2d 213 (1st Cir. 2012). In <u>Rogers</u>, after a trial without a jury, this Court determined that the plaintiffs failed to carry their burden of proving that the City offended Constitutional protections. The Court entered judgment in favor of the defendants. <u>Id.</u> at 229.

In the instant case, the Plaintiffs[1] sought to distinguish their claims from those in <u>Rogers</u> by asserting that they challenged the overall policy of granting free use of City fields to religious schools, whereas <u>Rogers</u> challenged the alleged preferential allocation of those facilities. Eighteen months after the instant case was filed, the Court granted the Plaintiffs' motion to dismiss their complaint with prejudice and entered judgment on behalf of the Defendants. The matter before the Court is the Defendants' motion for attorneys' fees resulting from the Plaintiffs' continued pursuit of their claims after the Court upheld the City's permitting policy in <u>Rogers</u>.

### I.  Factual Background and Procedural History

A. <u>Rogers v. Mulholland</u>

The factual circumstances from which this litigation arose have been described in some detail in <u>Rogers</u>, in which Pawtucket residents with children attending Pawtucket public schools sought to enjoin the City from granting permits for the use of its

---

[1]

Only Colleen Arneson was a plaintiff in <u>Rogers</u> as well as the instant case; the defendants in both cases are identical.

athletic fields and from granting allocation of use of those fields that, according to the Plaintiffs, was exclusive, preferential, and in violation of Constitutional protection. See Rogers v. Mulholland, 858 F.Supp.2d at 216-221. Therefore, only a brief summary is provided herein.

Pawtucket, a city of approximately nine square miles with approximately 70,000 residents has three public and two private[2] high schools, three public junior high schools, and three private elementary/junior high schools. Id. at 216. For the most part, the public and private schools do not have athletic fields on their grounds; the schools' athletic teams share use of City-owned and maintained fields. Id. In order to accommodate conflicting practice and game schedules, particularly those related to the use of football and soccer fields, the City issues use permits to both public and private schools upon their requests. Id.

In 2011, the City budgeted approximately $40,000-$50,000 for maintenance and upkeep of its athletic facilities. Id. at 217. O'Brien Field, one of the City's facilities that is particularly sought after by both public and private school teams, had been reconstructed in 2001; the cost to the City to maintain O'Brien Field on an annual basis (exclusive of labor) is approximately $9,000. Id. The dispute in Rogers concerned primarily the

---

[2]
The private schools at issue in this case are Catholic schools.

3

permitting of O'Brien Field and that of Field # 2 at the McKinnon/Alves Soccer Complex. In essence, the plaintiffs in <u>Rogers</u> contended that the City granted field space to religious schools at the expense of public schools, thus assisting and endorsing the Catholic religion. <u>Id.</u> at 226.

By bringing a complaint against the City in this Court, the <u>Rogers</u> plaintiffs sought to end the City's allegedly discretionary pro-sectarian field permitting policy (the "Policy"). <u>Id.</u> at 222. The plaintiffs brought federal claims under the Establishment Clause and for Equal Protection pursuant to the First, Fifth, and Fourteenth Amendments to the United States Constitution, as well as Freedom of Religion and Equal Protection claims under the Rhode Island Constitution. <u>Id.</u> Following a trial without a jury, this Court determined that (1) the <u>Rogers</u> plaintiffs had standing, <u>id.</u> at 222; (2) the Policy had a predominant secular purpose, <u>id.</u> at 226; (3) the Policy did not have the purpose and effect of impermissibly aiding religion, <u>id.</u> at 227 ; (4) the Policy did not excessively entangle government with religion, <u>id.</u>; and (5) a reasonable observer would not perceive the Policy as an endorsement or sponsorship of religion, <u>id.</u> at 228. In the absence of a developed argument by the plaintiffs regarding their Equal Protection claim, the Court deemed that issue waived. <u>Id.</u> at 228. Judgment was entered for the City and no appeal was taken therefrom.

B. This Case

On May 10, 2011, the Plaintiffs filed the three-count Complaint in this Court, noting that the action "challenges Pawtucket's policy of providing <u>free, subsidized use</u> of City fields/facilities to religious (Catholic) schools," in contrast to <u>Rogers</u>, which challenged "Pawtucket's <u>preferential allocation</u> of City fields/facilities to religious (Catholic) schools over public schools." Complaint ¶ 4 (emphases in original).

On July 25, 2011, the case was stayed pending the resolution of <u>Rogers</u>, which had commenced on October 13, 2009. After this Court rejected the plaintiffs' claims in <u>Rogers</u>, the Court lifted the stay and the parties in the instant case engaged in discovery that frequently turned contentious.[3]

On September 24, 2012, the Defendants filed a motion for summary judgment based on their contention that, for the reasons identified in <u>Rogers</u>, "there is no basis to conclude that allowing the Catholic Schools within the City free access to the athletic fields violates the Establishment Clause." Defs.' Mot. Sum. Judg. 24 (Docket # 30). At the same time, the Defendants also moved to stay any further discovery until their motion for summary judgment had been decided, on the ground that the Plaintiffs' pending

---

[3]

The Court notes that, although the Defendants repeatedly and, for the most part, successfully, challenged the Plaintiffs' discovery requests, they did not ask for sanctions in connection with those requests.

discovery requests related to information that was immaterial and irrelevant to the determination of whether the City's policy violates the Establishment Clause." Defs.' Mot. Stay at 2 (Docket # 32).

On October 12, 2012, the Plaintiffs filed an objection (Docket # 36) to the Defendants' motion to stay, pointing out that their own motion to compel certain documents and their request to depose one of the Defendants were already pending. (Docket # 36). At an October 18, 2012 hearing on the Defendants' motion to stay, the Plaintiffs requested a six week discovery extension and they suggested[4] that they could not defend their position fully against the Defendants' motion for summary judgment because the Plaintiffs did not "have access to all documents and all information." At the conclusion of the hearing, the Defendants' motion to stay was granted and discovery was stayed (Text Order 10/18/12). The Court suggested that the Plaintiffs comply with the requirements of Fed. R. Civ. P. 56(d) if they wished to conduct further discovery related to the issues raised in the Defendants' motion for summary judgment. The Plaintiffs, however, did not file a motion pursuant to Rule 56(d).

---

[4]
    Under Federal Rule 56(d), a nonmovant must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment. Fed. R. Civ. P. 56(d). No such submissions were made by the Plaintiffs.

Instead, on November 5, 2012, the Plaintiffs filed, without further explanation, a one-sentence motion pursuant to Rule 41(a)(2) to dismiss this action "with prejudice, all parties bearing their own costs and fees." (Docket # 37). In response, the Defendants requested that the Court dismiss the case with prejudice "only upon a finding that the dismissal is an adjudication on the merits, leaving open to Defendants the opportunity, if they so choose, to recover attorneys' fees." Defs.' Obj. at 1 (Docket # 38). Alternatively, the Defendants requested that the Court deny the Plaintiffs' motion to dismiss and rule on the Defendants' pending motion for summary judgment. Id. In their supporting memorandum, the Defendants noted that they had spent significant time and resources litigating the case, the main issues of which had since been resolved by Rogers. Id. at Page 4 of 6. The Defendants also expressed concern that, under Plaintiffs' interpretation of Rogers, "granting dismissal without an adjudication on the merits would potentially leave Defendants exposed to litigation from other Pawtucket citizens." Id.

The Court conducted a hearing on the Plaintiffs' motion to dismiss the Complaint on December 4, 2012, after which it took the matter under advisement. On January 23, 2013, the Court issued a Memorandum and Order ("M&O") in which it granted the Plaintiffs' motion as to dismissal of the Complaint with prejudice. However, the motion was denied with respect to the Plaintiffs' request to

condition dismissal on the parties' bearing their own costs and fees. M&O at 3 (Docket # 39). The Court pointed out that the Defendants invested significant resources in responding to Plaintiff's numerous requests for admissions, interrogatories, and discovery, and to a frivolous motion for recusal. Id. The Court further noted that "'[a] voluntary dismissal with prejudice under Fed. R. Civ. P. 41(a)(2) is a complete adjudication on the merits of the dismissed claim.'" Id. (quoting United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998)). Finally, the Court advised the Plaintiffs that, if they found the conditions of the dismissal "'to be too onerous, they need not accept them' and they are entitled to withdraw the Rule 41(a)(2) motion and proceed with the action," in which case the Court would rule on Defendants' motion for summary judgment. M&O at 3 n.3 (quoting Mateo v. Empire Gas Co., Inc., 287 F.R.D. 124, Civil No. 11-1285 (D.P.R. Nov. 9, 2012)). The Plaintiffs did not withdraw their motion and they raised no objection to the condition in the M&O. Judgment dismissing the Complaint with prejudice was entered on January 31, 2013. (Docket # 40). No appeal was taken therefrom.

On February 14, 2013, the Defendants filed a motion for attorneys' fees on the ground that the Plaintiffs' pursuit of the instant claim after this Court rendered the decision in Rogers and the attendant crushing discovery requests demonstrated the frivolousness of their suit and warranted the assessment of fees.

8

Defs.' Mem. Mot. Attorneys' Fees at 2 (Docket # 41-1). The accompanying affidavit of Defendants' counsel requested $40,681 in attorneys' fees incurred by the Defendants from May 5, 2012 (Decision in <u>Rogers</u>) through February 6, 2013 (preparation related to motion for attorneys' fees). Following an order by this Court directing the Defendants to address whether they may be considered prevailing parties under § 1988 where the Court dismissed the matter with prejudice pursuant to Fed. R. Civ. P. 41(a)(2), the Defendants filed a supplemental memorandum on March 28, 2013 (Docket # 43), in which they acknowledged that the First Circuit has not yet addressed the precise question of whether a defendant is a "prevailing party" for the purpose of awarding attorneys' fees under § 1988, where the claim is voluntarily dismissed with prejudice under Rule 41(a)(2). Defs.' Suppl. Mem. at Page 5 of 8.

On April 1, 2013,[5] the Plaintiffs filed a response in opposition to the Defendants' motion for attorneys' fees (Docket # 44). In their objection, the Plaintiffs argued that (1) dismissal with prejudice before adjudication on the merits precludes the Defendants from qualifying as a "prevailing party," Pltfs.' Mem. at Page 3 of 12; and (2) Defendants are not entitled to attorneys' fees because the Plaintiffs' suit was not "frivolous, unreasonable,

---

[5]

Plaintiffs' response to Defendants' motion for attorneys' fees was due on March 4, 2013. The Plaintiffs provide no explanation for the tardy response.

or groundless." Id. at Page 8 of 12. The Plaintiffs also rejected the Defendants' contention that the Plaintiffs elected to dismiss their claims to avoid an unfavorable ruling on summary judgment. Id. at Page 12 of 12.[6]

## II.  Standard of Review

Generally, parties to civil litigation bear their own attorney's fees under the so-called "American Rule." Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 234 (1st Cir. 2012). However, Congress established an exception to the "American Rule,""'[f]or private actions brought under 42 U.S.C. § 1983 and other specified measures designed to secure civil rights.'" Torres-Santiago v. Municipality of Adjuntas, 693 F.3d at 234 (quoting Sole v. Wyner, 551 U.S. 74, 77, 127 S.Ct. 2188, 167 L.Ed.2d 1069 (2007)); see also, Richardson v. Miller, 279 F.3d 1, 3 (1st Cir. 2002)(noting that "[u]nder the Fees Act, 42 U.S.C. § 1988, the district court may award reasonable attorney's fees to a prevailing party in a civil rights case brought under 42 U.S.C. § 1983."). The exception is intended to afford plaintiffs "'effective access to the judicial process' for persons with civil rights grievances."

---

[6]

In support of this position, the Plaintiffs' Memorandum features an affidavit by one of Plaintiffs' counsel, in which he asserts, for the first time, that he moved to dismiss the Complaint with prejudice, and that he elected not to withdraw that motion, solely because of personal reasons that precluded him from representing his clients in an effective manner. Affidavit at ¶¶ 6, 12. The Court notes that Plaintiffs were also represented by co-counsel admitted *pro hac vice.*

Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)(quoting H.R> Rep. No. 94-1558, p. 1 (1976)).

While "'an award of fees in favor of a prevailing plaintiff in a civil rights suit is the rule, ... fee-shifting in favor of a prevailing defendant is the exception.'" Torres-Santiago v. Municipality of Adjuntas, 693 F.3d at 234 (quoting Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 236 (1st Cir. 2010)). Thus, "[p]revailing defendants in an action brought under 42 U.S.C. § 1983 may be granted attorneys' fees only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" Rossello-Gonzalez v. Acevedo-Vila, 483 F.3d 1, 5 (1st Cir. 2007)(quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); see also Hughes v. Rowe, 449 U.S. 5, 14-16, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (applying the *Christiansburg Garment Co.* standard to a 42 U.S.C. § 1983 case)). As noted by the First Circuit, "[t]his standard is, by design, a difficult one to meet." Torres-Santiago v. Municipality of Adjuntas, 693 F.3d at 234.

To determine whether the standard has been met, "'the court must assess the claim at the time the complaint was filed, and must avoid the post-hoc reasoning that, because the plaintiff did not ultimately prevail, the claim must have been frivolous, unreasonable or without foundation.'" Rossello-Gonzalez v. Acevedo-

_Vila_, 483 F.3d at 5 (quoting _Tang v. Dep't of Elderly Affairs_, 163 F.3d 7, 13 (1st Cir.1998)). However, "[e]ven if the Plaintiffs' action was frivolous, it is within the discretion of the district court to deny fees." _Rossello-Gonzalez v. Acevedo-Vila_, 483 F.3d at 6; _Tang v. Dep't of Elderly Affairs_, 163 F.3d 7 at 15 ("[T]he district court still retains discretion to deny or reduce fee requests after considering all the nuances of a particular case.").

Although the focus of the Court's analysis in determining whether to award attorneys' fees to a prevailing defendant "must focus primarily on the claims at the time that the complaint was filed," _Lamboy-Ortiz v. Ortiz-Velez_, 630 F.3d at 241 (citing _Tang v. Dep't of Elderly Affairs_, 163 F.3d at 13), "fees also may be awarded on rare occasions where 'the plaintiff continued to litigate after [the claims] _clearly_ became [frivolous, unreasonable, or groundless].'" _Lamboy-Ortiz v. Ortiz-Velez_, 630 F.3d at 241 (quoting _Christiansburg Garment Co. v. EEOC_, 434 U.S. at 422, 98 S.Ct. 694 (emphasis added)). With respect to that scenario, the First Circuit has cautioned against the danger of hindsight in "assessing whether a claim 'clearly' became untenable prior to the close of suit." _Lamboy-Ortiz v. Ortiz-Velez_, 630 F.3d at 241 ("It would be all too easy to assume that, if a claim did not prevail in the end, it must have become obvious to the plaintiff at some earlier juncture (_e.g._, upon completion of discovery) that the claim lacked support."). Although a finding of

12

bad faith is not necessary to "'justify an award of fees for the continuation of a clearly untenable claim,'" id. at 241-242 (quoting Christiansburg Garment, 434 U.S. at 421, 98 S.Ct. 694), the Court must at least conclude that, "following the filing of the claim, circumstances changed to such an extent that a reasonable person could not help but conclude that the claim was no longer viable." Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d at 242.

### III. Discussion

A. The Prevailing Party

Pursuant to 42 U.S.C. § 1988(b), the Court "in its discretion, may allow the prevailing party [in an action to enforce a claim under § 1983] ... a reasonable attorney's fee as part of the costs..." 42 U.S.C. § 1988(b). Based on the plain language of the provision in Section 1988(b), the ability to obtain reasonable attorneys' fees is not limited to plaintiffs; rather, it allows for the possibility that a defendant may obtain such fees, provided that (1) it is the "prevailing party," and (2) it meets the standard set forth in Christiansburg (attorney's fees may be awarded to a prevailing defendant "[u]pon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."). Christiansburg Garment, Co. v. EEOH, 434 U.S. at 421, 98 S.Ct. 694.

For the purpose of awarding attorney's fees, parties are considered to be "prevailing" if "'they succeed on any significant

issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 199-100 (1st Cir. 2009)(quoting Hensley v. Eckerhart, 461 U.S. at 433, 103 S.Ct. 1933 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978)) (internal quotation marks omitted). In other words, a plaintiff is a prevailing party when the "'actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying defendant's behavior.'" De Jesus Nazario v. Morris Rodriguez, 554 F.3d at 199-200)(quoting Farrar v. Hobby, 506 U.S. 103, 111-12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); see also Sole v. Wyner, 551 U.S. 74, 83, 127 S.Ct. 2188, 2194, 167 L.Ed.2d 1069 (2007) ("The touchstone of the prevailing party inquiry ... 'is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'")(citation omitted). To prevail means that a party has effected a court-ordered material change of the parties' legal relationship. Buckhannon Bd. & Care Home v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).

B.  Adjudication on the Merits

It is well-established law in this Circuit that "'a voluntary dismissal with prejudice under Fed. R. Civ. P. 41(a)(2) is a complete adjudication on the merits of the dismissed claim.'" United States v. Cunan, 156 F.3d at 114 (quoting Harrison v. Edison

Bros. Apparel Stores, Inc., 924 F.2d 530, 534 (4th Cir.1991)).

Thus, a judgment dismissing a "previous suit 'with prejudice' bars

a later suit on the same cause of action." United States v. Cunan,

156 F.3d 110, 114 (quoting Lawlor v. Nation Screen Serv. Corp., 349

U.S. 322, 327, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)); American

Cyanamid Co. v. Capuano, 381 F.3d 6, 17 (1st Cir. 2004).

Courts which have addressed the question of whether a

defendant can be considered to be the "prevailing party" for the

purpose of awarding attorneys' fees under Section 1988 where the

plaintiff voluntarily dismisses the claim, have come to different

conclusions. In Dean v. Riser, the Fifth Circuit Court of Appeals

concluded that a defendant qualifies as a prevailing party when a

civil rights plaintiff withdraws the claim, provided "the

plaintiff's case was voluntarily dismissed to avoid judgment on the

merits" and the defendant establishes that "the plaintiff's suit

was frivolous, groundless or without merit." Dean v. Riser, 240

F.3d 505, 511 (5th Cir. 2001).

In Szabo Food Service v. Canteen Corp., the Seventh Circuit of

Appeals rejected the defendant's request for fees under Section

1988 because a "dismissal without prejudice under Rule 41(a)(1)(i)

does not decide the case on the merits." Szabo Food Service v.

Canteen Corp., 823 F.2d 1073, 1076 (7th. Cir. 1987), cert.

dismissed 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). The

Szabo court noted, however, that "[a] dismissal under Rule 41(a) is

15

unlike a dismissal with prejudice under Rule 41(b), which enables the defendant to say that he has "prevailed," id. at 1076-1077, and the court suggested that "[s]urrender by the plaintiff" would support a defendant's request for attorney's fees. Id. at 1077.

In Marquart v. Lodge 837, Int'l Ass'n of Machinists, the Eighth Circuit Court of Appeals concluded that the defendant in a case was not a prevailing party where the plaintiff "voluntarily withdrew her complaint with prejudice prior to a judicial determination on the merits" and there was "not a scintilla of evidence that [the plaintiff] voluntarily withdrew her complaint to escape a disfavorable judicial determination on the merits." Marquart v. Lodge 837, Int'l Ass'n of Machinists, 26 F.3d 842, 851-852 (8th Cir. 1994).

In Roane v. City of Mansfield, the Sixth Circuit Court of Appeals denied the defendants' request for attorney's fees pursuant to Section 1988 after the plaintiff in a civil rights case voluntarily dismissed his appeal with prejudice under Rule 41(a)(2). Roane v. City of Mansfield, 229 F.3d 1153, 2000 WL 1276745 at *2 (6th Cir. Aug. 28, 2000)("Defendants are not prevailing parties under § 1988 inasmuch as Defendants did not receive a favorable judicial determination on the merits ... and we are not persuaded that this was a 'truly egregious case[ ] of misconduct' in any event.").

The First Circuit Court of Appeals has not yet addressed the

precise issue of whether a defendant is considered a prevailing party for the purpose of seeking attorney's fees under Section 1988, where the plaintiffs' claim has been voluntarily dismissed with prejudice under Rule 41(a)(2). In Maine Sch. Admin. Dist. No. 35 v. Mr. and Mrs. R., the plaintiff school district dismissed its complaint against the defendant parents under Rule 41(a)(1). The defendants sought attorneys' fees and costs pursuant to the fee-shifting provision of IDEA [Individuals with Disabilities Education Act]; the district court denied their request on the ground that they were not prevailing parties. Maine Sch. Admin. Dist. No. 35 v. Mr. and Mrs. R., 321 F.3d 9, 13 (1st Cir. 2003). The First Circuit disagreed, concluding that the parents were prevailing parties, noting that they "were haled into court as defendants and won a clear-cut victory on the sole issue in the case." Id. at 16. Specifically, "[t]he School District commenced a civil action and the appellants successfully defended against it (i.e., the School District did not receive any of the relief that it sought and, eventually, threw in the towel." Id. at 15. The Court noted that, although "a purely technical or de minimis victory cannot confer prevailing status," a plaintiff prevails when actual relief on the merits of a party's claim "materially alter[s] the litigants' legal relationship by modifying one party's behavior in a way that directly benefits the other." Id. at 14-15 (citing Farrar v. Hobby, 506 U.S. 103, 111-112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)).

17

C. This Case

After the Defendants' motion for summary judgment had been fully briefed[7] by the parties, the Plaintiffs filed a motion to dismiss, voluntarily, their Complaint with prejudice under Rule 41(a)(2), "all parties bearing their own Costs and fees." The Defendants agreed to the dismissal with prejudice "only upon a finding that the dismissal is an adjudication on the merits, leaving open to Defendants the opportunity, if they so choose, to recover attorneys' fees." Def.'s Obj. at Page 1 of 6 (Docket # 38). In the alternative, the Defendants asked the Court to deny the Plaintiffs' motion to dismiss the Complaint and to rule on the Defendants' motion for summary judgment.

The Court's January 23, 2013 M&O indicated to the Plaintiffs that (1) a voluntary dismissal with prejudice under Fed. R. Civ. P. 41(a)(2) is a complete adjudication on the merits of the dismissed claim; and (2) the Plaintiffs could withdraw the Rule 41(a)(2) motion and proceed with the action if they found the denial of their request to condition dismissal on the parties' bearing their own costs and fees too onerous. The Plaintiffs elected not to withdraw their Rule 41(a)(2) motion.

As a result of the Plaintiffs' voluntary dismissal under Rule

_____

[7]

Although the Plaintiffs claimed to need additional discovery, they never followed through by complying with the Rule 56(d) requirements. See supra, Section I. B.

41(a)(2) - which constitutes a decision on the merits in this Circuit - the Defendants have succeeded in securing a court-ordered "material alteration of the legal relationship of the parties," see Buckhannon Bd. & Care Home v. W. Va. Dep't of Health and Human Res., 532 U.S. at 604. The Plaintiffs are now precluded from challenging the City's practice of allowing private schools in the City free access to fields and athletic facilities. As such, the Defendants are "prevailing parties" for the purpose of seeking attorney's fees under Section 1988. However, the analysis does not end there.

D. Defendants' Claims for Attorneys' Fees

The Defendants "may be granted attorneys' fees only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" Rossello-Gonzalez v. Acevedo-Vila, 483 F.3d at 5 (quoting Christiansburg Garment, 434 U.S. at 421. In this case, the Defendants only request attorneys' fees incurred through the Plaintiffs' continuing pursuit of their claims after this Court rendered the decision in Rogers.

The Defendants assert that Rogers, in effect, resolved the "main issues at the core of this case." Def.'s Obj. to Pltfs.'Mot. Dismiss Page 4 of 6 (Docket # 38). In response, the Plaintiffs maintain that Rogers "dealt solely with the issue of preferential allocations of fields," whereas their claims in the present case

19

relate to alleged "subsidies" provided by the City to religious schools. Defs.' Obj. Page 11 of 12 (Docket # 44).

In Rogers, the plaintiffs sought "injunctive and declaratory relief against preferential allocation of permits for the use of publicly owned athletic fields to private, religious schools." Amended Complaint ¶ 1, Rogers v. Mulholland, C.A. No. 09-493, (Docket # 32)(emphasis added). The claims were brought by Pawtucket residents and tax payers whose children were former or current students at Pawtucket public schools. The plaintiffs in Rogers took exception to the alleged preference given to religious schools in the issuance of use permits for publicly owned athletic fields and/or facilities. In other words, the plaintiffs alleged that, because the City granted "exclusive or preferential" use of those facilities to private religious schools, public schools (and the plaintiffs' children) were disadvantaged as a consequence.

In this litigation, the Plaintiffs are Pawtucket homeowners and taxpayers.[8] The Plaintiffs challenge the City's "half-century policy of subsidizing religion by providing publicly owned athletic fields and facilities to religious (Catholic) schools free of charge." Complaint ¶ 1 (Docket # 1)(emphasis added). Specifically, the Plaintiffs assert, _inter alia_, that the City uses municipal tax funds to maintain and repair its athletic facilities. Id. at ¶ 16-

---

[8]
    Only one plaintiff in the current litigation was also a plaintiff in the Rogers litigation.

18. The Plaintiffs further allege that the City permits the use of those facilities to Catholic schools in Pawtucket free of charge. Id. at ¶ 25, 29. According to the Complaint, the majority of students in those schools reside outside of Pawtucket. Id. at ¶ 20. The Plaintiffs voice their concerns that, by waiving all fees for Catholic schools, the Defendants have deprived the City of hundreds of thousands of dollars in revenue, thus contributing to the City's considerable budget deficit. Id. at 53.

In both Rogers and the present case, the respective complaints allege violations of the First, Fifth, and Fourteenth Amendments of the United States Constitution as well as the Rhode Island Constitution. Both complaints arise from the City's policy to permit both public and private schools to use City-owned athletic fields and facilities without charge. However, while the challenge in Rogers was limited to the manner in which actual use of the fields was regulated by issuing permits to the schools, the current litigation concerns the broader question of whether the City's practice of permitting the use of its taxpayer supported facilities to religious schools without charge offends constitutional protections. To that extent, while the claims are similar in both facts and law, they are not identical.

The Plaintiffs also contend that the "reasonableness of a plaintiff's claim must be assessed as of the time suit was filed." Defs.' Obj. Page 10 of 12 (Docket # 44). However, while the Court's

21

analysis "must focus primarily on the claims at the time that the complaint was filed," Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d at 241-242 (citing Tang, 163 F.3d at 13), the Supreme Court established in Christansburg Garment that "fees also may be awarded on rare occasions where 'the plaintiff continued to litigate after [the claims] clearly became [frivolous, unreasonable, or groundless].'" Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d at 241. On those "rare occasions," the Court "must at a minimum find that, following the filing of the claim, circumstances changed to such an extent that a reasonable person could not help but conclude that the claim was no longer viable." Id. at 241-242 (quoting Christiansburg Garment, 434 U.S. at 422).

This is a close case. On one hand, it is apparent that the Plaintiffs, in purporting to protect the City's budget, engaged the Defendants in litigation that forced the City to incur tens of thousands of dollars in attorney's fees, which only added to the City's documented budgetary woes.[9] Moreover, the Plaintiffs continued to pursue this action even after the Rogers decision cast some doubt on their ability to prevail with their similar, albeit not identical, claims. Following an often contentious discovery period and after the Defendants' motion for summary judgment had been fully briefed, the Plaintiffs elected to abandon their claims

---

[9]

According to the Defendants, the City has no insurance coverage on this matter; its costs of defense are born entirely by the City. Defs.' Obj. to Pltfs.' Mot. Dismiss Page 4 of 6 n. 1 (Docket # 38).

by voluntarily dismissing the Complaint with prejudice.

Nevertheless, the Plaintiffs' concern that the City had, for many years, expended taxpayer dollars to maintain and repair athletic facilities that, in significant part, benefitted privately funded religious schools without any contribution from those schools, cannot be characterized as entirely groundless and/or frivolous. And, although this Court determined in Rogers that the City's manner of allocating permits for using the City's athletic facilities to public and private schools did not offend Constitutional protections, the claims in the present case, although similar, are not completely identical with those raised in Rogers.  Because the case was dismissed voluntarily prior to trial and prior to a determination of the Defendants' motion for summary judgment - although the dismissal is "on the merits" - the possibility remained that decisive facts had not yet been considered by this Court. See Christiansburg Garment, 434 U.S. at 422 ("Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.").

In sum, while the continuing pursuit of the Plaintiffs' claims, particularly in light of Rogers, appears to have been ill-advised, the Court is of the opinion that it does not meet the extremely high standard imposed on prevailing defendants who seek a fee award under Section 1988. See, e.g. Tang v. State of R.I.,

23

Dept. of Elderly Affairs, 163 F.3d at 13 (noting that a court "must avoid the post-hoc reasoning that, because the plaintiff did not ultimately prevail, the claim must have been frivolous, unreasonable or without foundation."); Torres-Santiago v. Municipality of Adjuntas, 693 F.3d at 234 (noting that "fee-shifting in favor of a prevailing defendant is the exception.").

### Conclusion

For the reasons stated herein, the Defendants' motion for attorney's fees is DENIED.


/s/ Mary M. Lisi

Mary M. Lisi
Chief United States District Judge

May 22, 2013